NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

NOLAN REAL ESTATE SERVICES INC,
*Plaintiff/Appellee,*

v.

THE HARTFORD STEAMBOILER
INSPECTION AND INSURANCE COMPANY,
*Defendant/Appellant.*

No. 1 CA-CV 20-0104
FILED 3-23-2021

Appeal from the Superior Court in Maricopa County
No. CV2012-013163
The Honorable Rosa Mroz, Judge

**AFFIRMED**

---

COUNSEL

Richards & Moskowitz, PLC, Phoenix
By William A. Richards
*Co-Counsel for Plaintiff/Appellee*

Lewis Rice, LLC, Kansas City, MO
By Thomas R. Larson, M. Cory Nelson
*Co-Counsel for Plaintiff/Appellee*

Raymond Greer & McCarthy, PC, Scottsdale
By Daniel W. McCarthy
*Co-Counsel for Defendant/Appellant*

Gammage & Burnham, PLC, Phoenix
By Cameron C. Artigue, Christopher L. Hering
*Co-Counsel for Defendant/Appellant*

Jones Turner, LLP, Irvine, CA
By Alan M. Jones, Jeffrey N. Gesell
*Co-Counsel for Defendant/Appellant*

---

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Michael J. Brown joined.

---

**W E I N Z W E I G**, Judge:

**¶1**         The Hartford Steam Boiler Inspection and Insurance Company ("Hartford") appeals a jury verdict for Nolan Real Estate Services, Inc. ("Nolan"). Because Hartford shows no error, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**         We view the facts and inferences in the most favorable light to sustaining the jury's verdict. *Gonzales v. City of Phoenix*, 203 Ariz. 152, 153, ¶ 2 (2002). Nolan managed an apartment complex owned by Parkway Associates ("Parkway") under a management agreement, which designated Nolan as Parkway's exclusive agent to manage and maintain the complex.

### I.      Broken Chiller

**¶3**         The apartment complex's air conditioning system included a commercial chiller and water tower. The chiller broke in the summer of 2011, after operating for over 18,000 hours, leaving the complex without enough air conditioning. Nolan hired cooling experts to examine the chiller, and they diagnosed the problem as a "badly scarred" slide valve. More specifically, the slide valve moved back and forth on a "steel rod or shaft housed inside of rubber-encased metal spring seals" to increase and decrease the delivery of cool air; the rubber seals eroded over time, exposing the metal springs underneath; and the springs scratched the steel shaft—causing the valve to stick at a 40 percent load capacity. Nolan replaced the slide valve and repaired the chiller at Parkway's expense.

## II. Insurance Policy

¶4 Nolan had an insurance policy ("Policy") with Hartford for "Equipment Breakdown Coverage." As relevant here, the Policy covered loses caused by a "fortuitous event," which included a "mechanical breakdown." The Policy did not, however, cover loses caused by "wear and tear" or "any gradually developing condition." Neither "mechanical breakdown" nor "wear and tear" was defined by the Policy.

¶5 Nolan tendered an insurance claim to Hartford under the Policy for the broken chiller. Hartford's engineer investigated the claim and concluded "[t]he root cause for this damage to the slide valve shaft was mechanical wear—metal against metal rubbing—that occurred over weeks or months." Hartford thus denied the claim, reasoning that "the loss is due to wear and tear of the slide valve and seals," and "[s]ince wear and tear is specifically excluded under the [Policy], this loss is not covered." Nolan sued Hartford for breach of contract and bad faith. Hartford unsuccessfully moved for summary judgment on the coverage issue.

## III. Jury Trial

¶6 A jury trial was held. Nolan and Hartford agreed on what caused the chiller's malfunction, and their expert witnesses agreed the rubber seals should have prevented direct contact between the metal springs and shaft. They disagreed, however, on whether this represented a covered loss under the Policy. Nolan argued the chiller suffered a "mechanical breakdown," while Hartford argued it malfunctioned based on "wear and tear."

¶7 Nolan called an expert witness, Bill Alexander, who owns a full service mechanical contracting company that installs and services air conditioning systems. Alexander told the jury that ordinary wear of the seals did not cause the chiller to malfunction and instead pointed to other possible causes, including contaminated oil, excessive oil, excessive oil pressure or a defective rubber-coating design. The jury also heard testimony that the chiller's manufacturer—Carrier Corporation—had changed the rubber material encasing the metal springs based on reports of multiple instances of seal failure. Midway through trial, Hartford unsuccessfully moved for judgment as a matter of law, arguing that Nolan sustained no damage or loss because the apartment complex's owner, Parkway, paid to fix the chiller.

¶8 At the end of trial, the court instructed the jury on the elements of Nolan's breach of contract claim. As shown in these

3

screenshots, which refer to Hartford as "HSB," the jury instructions explained the court's role to interpret the insurance contract:

> **Interpretation of Contract**
>
> The interpretation of a contract, including the insurance policy issued by HSB to Nolan is a question of law for the Court to decide. You may not attempt to interpret the policy in a manner contrary to these instructions.

¶9       The court thus defined the relevant contract terms for the jury ("mechanical breakdown" and "wear and tear") as follows:

> **Breach of Contract**
>
> Nolan claims that HSB breached the parties' insurance contract. On this claim, Nolan must prove that there was an insurance contract, HSB breached the contract, and that breach resulted in damage to Nolan.
>
> The parties agree that there was an insurance contract.
>
> Nolan claims that HSB breached the insurance contract. On its claim for breach of contract, Nolan must prove that an "accident", as defined in the policy, occurred. To show that an "accident" occurred, Nolan must prove the following elements:
>
> 1. there was a "fortuitous event"; and
> 2. the event caused direct physical damage to "covered equipment".
>
> A "fortuitous event" includes a "mechanical breakdown." The term "mechanical breakdown" is not specifically defined in the HSB insurance policy. For purposes of this case, the term "mechanical breakdown" means "a functional defect in the moving parts of machinery which causes it to operate improperly or cease operating."
>
> As defined in the policy, none of the following is an "accident", however caused and without regard to whether such condition or event is normal and expected or unusual and unexpected: (1) depletion, deterioration, … or wear and tear; (2) any gradually developing condition; or (5) misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.
>
> The term "wear and tear" is also not specifically defined in the HSB insurance policy. For purposes of this case, the term "wear and tear" means deterioration or abrasion which an object experiences by its expected contacts between its component parts and outside objects during the period of its natural life expectancy.

**¶10**        Hartford did not object to these jury instructions.  The jury rejected Nolan's bad faith claim but found that Hartford breached the insurance contract and awarded Nolan over $250,000 in damages.  After the verdict, Hartford unsuccessfully renewed its motion for judgment as a matter of law and moved for a new trial under Arizona Rule of Civil Procedure 59(a)(1)(H).  The superior court granted Nolan's requests for prejudgment interest, attorney fees and costs.  Hartford timely appealed the breach of contract verdict.  We have jurisdiction.  *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶11**        Hartford raises two arguments on appeal.  Hartford first reargues that the broken chiller was not a covered loss under the Policy because it broke from gradual "wear and tear."  Hartford then asserts that Nolan cannot recover under the Policy because Parkway ultimately paid to repair the chiller.  We address each argument.

### I.        "Wear and Tear" Exclusion

**¶12**        Hartford urges this court to "overturn" the jury's verdict in favor of Nolan for the breach of contract claim because "the undisputed facts" show the chiller was not covered.  Hartford contends we should accord no deference to the jury's verdict because "the interpretation and application of an insurance policy" presents a pure question of law.  This argument fails.

**¶13**        We affirm a jury verdict if, viewing the evidence in the light most favorable to upholding it, "any substantial evidence could lead reasonable persons to find the ultimate facts sufficient to support the verdict."  *Gonzales*, 203 Ariz. at 153, ¶ 2.  The superior court may grant a new trial when a jury's verdict is not justified by the evidence or is contrary to law.  Ariz. R. Civ. P. 59(a)(1)(H).  We review the denial of a new trial for a clear and manifest abuse of discretion, "recognizing [the superior court] ha[s] substantial latitude in deciding whether to upset the [jury's] verdict." *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 53, ¶ 12 (1998), *abrogated on other grounds by State v. Fischer*, 242 Ariz. 44 (2017).  "Because a jury plays a vital role in our civil justice system, a trial court may not simply substitute its judgment for the jury's." *Soto v. Sacco*, 242 Ariz. 474, 477, ¶ 7 (2017).

**¶14**        On this record, the jury could reasonably conclude that a "mechanical breakdown" caused the chiller to malfunction rather than "wear and tear," as defined by the court in the jury instructions. The record includes substantial evidence that a "functional defect" in the rubber

material caused the breakdown. As described above, the jury received substantial evidence to support its verdict. *See supra* ¶ 7.

¶15        Hartford counters that "[a]ll the evidence" proves a "worn slide valve" caused the chiller to break, and the slide valve was damaged "over a period of time," but that confuses the issue and overlooks the record. The court instructed the jury—without objection from Hartford—that a "mechanical breakdown" or "functional defect" is covered even if it emerges "over a period of time." Because the record has substantial evidence to support the jury's verdict, we affirm.

## II.    "Valuation" Clause

¶16        Next, Hartford argues it need not pay an insured's "equipment breakdown" claim if the insured does not ultimately cover the cost of repair from its own pockets. Hartford relies on the "Valuation" provision, which states that Hartford's "payment for damaged 'covered property' will be the smallest of [three options, including] [t]he amount you actually spend that is necessary to repair or replace the damaged property." Nolan disputes Hartford's interpretation and argues it waived the argument.

¶17        Even if this argument were preserved, however, the plain terms of the "Valuation" clause concern the amount or valuation of an insurance claim and not whether losses are covered. *Keggi v. Northbrook Prop. & Cas. Ins. Co.,* 199 Ariz. 43, 46, ¶ 11 (App. 2000) (construing insurance contract under its plain and ordinary meaning). Moreover, any ambiguity in an insurance contract is construed against the insurer. *Id.* Because Hartford shows no abuse of discretion, we affirm.[1]

---

[1]        Hartford also moves to vacate the superior court's attorney fees award. Because we affirm the verdict, we reject Hartford's request.

## CONCLUSION

¶18      We affirm the jury's verdict and final judgment on Nolan's breach of contract claim.  Both parties request their attorney fees and costs.  As the prevailing party, we grant Nolan's request for reasonable attorney fees on appeal under A.R.S. § 12-341.01(A).   We also award Nolan its reasonable costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA